**In re Dennis W. SININGER, Debtor.**

**Dennis W. SININGER, Plaintiff,**

**v.**

**Cecil FULTON and Danny Pride, Clerk of Common Pleas Court of Brown County, Defendants.**

**Bankruptcy No. 1–87–02316.**
**Adv. No. 1–87–0143.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 21, 1988.

George P. Leicht, Richard D. Nelson, William R. Schumacher, Cincinnati, Ohio, Trustee.

BURTON PERLMAN, Chief Judge.

The plaintiff in this adversary proceeding is a Chapter 13 debtor in this court. Plaintiff has here brought an action seeking an order directed to defendant, Clerk of Common Pleas Court for Brown County, Ohio, requiring that he turn over the sum of $14,000.00, which he is holding, to the Chapter 13 trustee in Cincinnati. The action is brought pursuant to 11 U.S.C. § 542, seeking turnover of property of the estate. As required by L.B.R. 5.2(a), the complaint contains an allegation that this is a core proceeding under 28 U.S.C. § 157. We hold that plaintiff is correct in this assertion, and that this is a core proceeding arising under 28 U.S.C. § 157(b)(2)(E). This court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District.

After the pleadings in the case closed, the court held a pretrial conference with counsel, at the conclusion of which a pretrial order was issued. Therein, it was provided that the case would be submitted for a final decision with the record to consist of a stipulation of fact. The parties were to file memoranda, which they have done.

The facts to which reference is made hereafter are derived from the stipulation of fact entered into by the parties. The controversy centers around a fund of $14,000.00 in the possession of defendant, Clerk of Common Pleas Court of Brown County, Ohio. The source of that fund is the following. Sometime in late 1986, the present plaintiff obtained a judgment in the amount of $53,200.00 against one Charles L. Kirk, in a malpractice action in the United States District Court for the Southern District of Ohio. The district judge reduced that award to $33,657.00. Home Insurance Company evidently was Kirk's insurer.

Prior to the time that the present plaintiff secured his judgment against Kirk, the present defendant, Cecil Fulton, secured a judgment against him in the Court of Com-

mon Pleas for Brown County, Ohio, for $12,206.09, plus costs, payable with interest from the date of judgment. After the present plaintiff secured his judgment against Kirk, Fulton filed a complaint in the Court of Common Pleas of Brown County, naming as defendants the present plaintiff, Dennis W. Sininger, Charles L. Kirk, and Home Insurance Company. In that complaint, Fulton, "as a judgment creditor", sought from the Common Pleas Court an order directing defendants Kirk and Home Insurance Company to withhold the sum of $20,457.85, plus interest, from any monies finally adjudged to be owing to Dennis W. Sininger. On the same date that such complaint was filed in the Common Pleas Court, Fulton filed a motion for a temporary restraining order in which the relief sought was that Kirk and Home Insurance Company be restrained from paying any money to defendant Sininger unless plaintiff received the amount demanded in his complaint.

That motion was supported by an affidavit made by Fulton's attorney, Gerald W. Shaw, in which he stated that a jury verdict had already been rendered in Federal District Court against Charles L. Kirk for the payment of money; that said Charles L. Kirk is insured by Home Insurance Company; and that upon a judgment and order of the Federal District Court, or a settlement made between the parties, said Charles L. Kirk and Home Insurance Company could be under an immediate duty to pay defendant Dennis Sininger the full amount of the award, and such payment could be made before a hearing is had on plaintiff's complaint. The Common Pleas judge then ex parte entered an order on the same date, granting the relief sought in the motion for temporary restraining order, such order directing Kirk and Home Insurance Company to "pay no money for which they may be obligated to defendant Dennis Sininger under a court judgment or a settlement agreement made pursuant thereto, unless plaintiff first receives the amount demanded in the Complaint, or until a judgment is rendered by this court on the merits of the Complaint."

The stipulation of fact says that there was then an agreement entered into by attorneys for the Home Insurance Company and Gerald Shaw, attorney for Fulton. (In view of the nature of the agreement hereafter appearing, we find it curious that Sininger was not a party to such agreement.) At any rate, the stipulation says that pursuant to such agreement, Home Insurance Company issued a check payable to Sininger, Fulton and Shaw, in the amount of $23,560.00, in return for which Fulton released Kirk and Home Insurance Company as defendants, presumably in the then pending Common Pleas action brought by Fulton against Sininger, Kirk and Home Insurance Company. The stipulation expressly says that Sininger was not a party to the agreement. Nevertheless, the check which was the subject of the agreement was subsequently negotiated with Sininger receiving $9,560.00 and the remaining $14,000.00, the fund here in dispute, being deposited with the Clerk of the Common Pleas Court in Brown County, Ohio, on May 22, 1987. Before any further action occurred by the Common Pleas Court, a bankruptcy petition was filed by the present plaintiff, Dennis W. Sininger, July 8, 1987. When the Court of Common Pleas was informed of this filing on August 8, 1987, that court stayed any further proceedings unless or until further order by the United States bankruptcy court.

The foregoing constitutes our findings of fact. They are derived from the stipulation of fact entered into by the parties, including the documents attached thereto. While such stipulation of fact does not inform us as to the derivation of the amount of $23,560.00, we think it fair to infer that this was a settlement amount for the federal district court case, the consideration for which would be that the insurance company would forego any right of appeal. Further, while we are not informed as to the reason for the distribution of the check with $9,560.00 going to Dennis Sininger, and the remaining $14,000.00 being deposited in the Common Pleas Court, it is fair for us to infer that thereby there was a recognition of the existence of a dispute between Fulton and Sininger as to the right to that

amount. The basis for this inference is that the stipulation of fact does inform us that Kirk and Home Insurance Company were released by Fulton from the Common Pleas Court litigation, and Fulton and Sininger were the only parties thereto remaining. We find the absences of factual information to which we have referred do not stand in the way of our disposition of the present controversy.

After careful consideration of the facts presented, we have reached the conclusion that plaintiff is entitled to the relief which he seeks in his complaint, and that the $14,000.00 fund now held by defendant Danny Pride, Clerk of Common Pleas Court for Brown County, Ohio, should be turned over to William R. Schumacher, Trustee of plaintiff's Chapter 13 case. That fund constitutes property of debtor's estate pursuant to 11 U.S.C. § 541, and must be turned over as required by 11 U.S.C. § 542.

The statute at 11 U.S.C. § 541(a)(1) expressly provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Defendant Fulton, in effect, argues that plaintiff had no legal or equitable interest in the $14,000.00 for it was attached when the Court of Common Pleas for Brown County entered its order on February 18, 1987 on Fulton's motion for a temporary restraining order. (Notwithstanding that the stipulation of fact says only that the distribution of the $23,560.00 was pursuant to agreement, Fulton assumes that the $14,000.00 portion paid into the Common Pleas Court was paid pursuant to the temporary restraining order. We accept this premise.) Thus, Fulton says in his memorandum that "[t]he action filed by the defendant Cecil Fulton was a garnishment ...". Defendant Fulton says that the attachment or garnishment displayed "the intention of the Court to take custody, control and possession of these funds." Thereby, says defendant, "a constructive transfer of the funds took place." He argues further that an actual or physical transfer took place when the money was paid into court in early May, 1987. The thrust of defendant's argument is that for his stated reasons, the $14,-000.00 fund is beyond the reach of this court. Defendant does not, however, present us with any authority to support his legal position.

Defendant's position is mistaken and is not in accord with the law. After the jury verdict in plaintiff Sininger's favor in the federal court, no one could seriously argue that Sininger did not have at least an equitable interest in funds in the hands of the defendant in that case for the purpose of satisfying his judgment. Such an argument could not be mounted any more successfully than could one on behalf of an employer that his employee who had earned wages from him did not have an equitable interest in those unpaid wages in his hands. And when such wages are paid into court pursuant to a garnishment order, the law is clear that the interest of the employee is not divested. *In re Cudaback,* 22 B.R. 914, 918 (Bankr.Neb.1982); *In re Carlsen,* 63 B.R. 706, 709 (Bankr.C.D.Cal. 1986). The payment of proceeds from a judgment into court after a jury verdict upon garnishment cannot divest a successful plaintiff of all interest in that fund, any more than can payment of wages of an employee into court pursuant to a garnishment order divest the employee of all of his interest in such wages. We conclude that plaintiff retained at least an equitable interest in the $14,000.00 in the possession of the Common Pleas Court. Indeed, defendant concedes that the attachment in this case did not terminate plaintiff's interest in the fund deposited in court for in his memorandum he says that there are issues to be litigated before a Common Pleas Court will order that the attached fund be delivered to a creditor.

The effect of the attachment or garnishment is to be determined by the laws of the state where the writ issues. *In re Carlsen, supra; In re Coston,* 65 B.R. 224, 226 (Bankr.D.New Mexico 1986). In *Carlsen,* the court made this point graphic when it observed at p. 709 that the law of Tennessee as applied in *In re Perry,* 48 B.R. 591 (Bankr.M.D.Tenn.1985), recognizes that execution of a writ of garnishment ends a debtor's legal and equitable rights in fu-

ture wages, but that this is not the case in California, where a similar order merely creates a lien upon the earnings and does not divest the debtor of all legal and equitable rights in his wages. The latter is also the law in Ohio. Thus, in *State Ex rel Auto Loan Co. v. Jennings*, 14 Ohio St.2d 152, 237 N.E.2d 305 (1968), the Supreme Court of Ohio accepted that it was the law in Ohio that mere garnishment of property does not vest "title" in a judgment creditor, citing with approval *In re Corbin*, 350 F.2d 514 (6th Cir.1965). We hold, therefore, that plaintiff retained an equitable interest in the $14,000.00 fund in the possesion of the Clerk of the Common Pleas Court.

We find support in *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) for our conclusion that this Chapter 13 business debtor retained an equitable interest in the $14,000.00 fund on deposit in the Common Pleas Court. In *Whiting Pools*, the Internal Revenue Service (IRS), had secured a tax lien on all of the property of Whiting Pools, and pursuant thereto, seized equipment, vehicles, inventory, and office supplies. The day after the seizure, Whiting Pools filed a Chapter 11 case in the Bankruptcy Court. Whiting Pools sought an order requiring the return of the seized property. In *Whiting Pools*, the U.S. Supreme Court held that even if a debtor does not have possession of its property at the commencement of a case, if it is, pursuant to 11 U.S.C. § 542(a), property which a "trustee can use, sell or lease under section 363", that is, property valuable to a reorganizing debtor, turnover will be ordered.[1] The fund on deposit in the case before us, of course, is such property.

It is suggested at 14 Ohio St.2d p. 158, 237 N.E.2d 305 of the Ohio *Jennings* case that the attachment may not have been without effect, and that the attachment

gave Fulton a security interest in the fund held by the court pursuant thereto. See also, *In re Evans*, 78 B.R. 145 (Bankr.N.D. Ohio 1987); *In re McNeely*, 51 B.R. 816 (Bankr. Utah 1985). Here, we must conclude that Fulton was unsuccessful in securing a lien interest in the fund. In his brief filed November 5, 1987, at p. 2, Fulton points out that a possible ground of defense to his judgment creditor suit in the Common Pleas Court is that Sininger's rights were not "protected when the money was attached". The record before us shows conclusively that Sininger's rights were not so protected. There is totally absent any showing as required by the Ohio Rules of Civil Procedure, 65(A)(2), that any effort was made to give notice of the motion for a temporary restraining order, or that notice was not necessary. Further, the affidavit in the record made by Fulton's attorney in support of the motion for temporary restraining order was plainly insufficient to meet the requirements of ORC 2716.11.[2]

Having concluded that plaintiff has an equitable interest in the fund in the possession of the Common Pleas Court of Brown County, and that therefore such fund is property of the estate pursuant to 11 U.S. C. § 541, we deal with the right of plaintiff to have that fund paid to the Chapter 13 trustee as he prays in his complaint. The Bankruptcy Code at 11 U.S.C. § 542 gives him that right. There is no question that the money is property which the trustee may "use ... under section 363" of Title 11, and plaintiff is therefore entitled to a turnover of the fund to the trustee.

The foregoing constitutes our conclusions of law.

---

1. At footnote 17, the court says that it expresses no view as to whether § 542(a) as applied in *Whiting Pools* is appropriate in Chapter 7 or 13 cases. Though the present proceeding arises in a Chapter 13 case, we have no difficulty in reading § 542(a) as expansively as does *Whiting Pools* because the related Chapter 13 case involves reorganization of a business.

2. We recognize that the question of whether or not Fulton secured a lien in the fund paid into court by reason of the attachment order, does not bear directly upon the resolution of the present controversy. Nevertheless, we deal with it because in this Chapter 13 case it is important that Fulton's classification be known so that administration of the plan may proceed without undue delay.