**RLM INDUSTRIES, INC., Appellant,**

v.

**INDEPENDENT HOLDING COMPANY et al., Appellees.**

[Cite as *RLM Industries, Inc. v. Indep. Holding Co.* (1992), 83 Ohio App.3d 373.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63201.

Decided Nov. 9, 1992.

*Dale A. Naticchia,* for appellant.

*James L. Reed, pro se.*

*Per Curiam.*

RLM Industries, Inc., plaintiff-appellant, timely appeals the decision of the Cleveland Municipal Court. Appellant challenges the trial court's decision that the court lacked authority to impose liability on attorney James L. Reed for indirect contempt in the amount of $21,282.90 and for attorney fees. Reed represented Independent Holding Company, d.b.a. Cleveland General Company, judgment debtor to appellant. The trial court did, however, hold Reed in indirect contempt of court and did award appellant $1,100 in attorney fees, but nothing more. The trial court reasoned that to impose the full $21,282.90 would be coercive in nature since Reed no longer held in his possession the $21,282.90.

In compliance with App.R. 11.1, it is the decision of this court that the trial court did not abuse its discretion when it decided not to act coercively against a judgment debtor not in possession of funds. For the reasons set forth below, we affirm. The apposite facts follow.

Independent Holding Company, d.b.a. Cleveland General Company ("Cleveland General"), was forced to close after incurring substantial financial difficulties. Cleveland General's primary financing was through a line of credit extended to it by Independence Bank ("the bank"). The relationship between Cleveland General and the bank began sometime around 1984, several years prior to this cause of action. The bank held a perfected security interest in all of Cleveland General's assets as well as any proceeds from the sale of those assets.

Appellant was an unsecured general creditor of Cleveland General. As a result of Cleveland General's financial difficulties, appellant instituted a cause of action against Cleveland General for the purpose of collecting the debt owed to it by Cleveland General. On April 4, 1990, a stipulated judgment entry was executed by the parties. The terms contained within the stipulation provided for a schedule of payments to be made by Cleveland General to appellant. The entry also stipulated that appellant would not execute on its judgment as long as the stipulated terms and conditions were complied with. On or about May 9, 1991, appellant transferred its judgment to the Cleveland Municipal Court for the purpose of execution. Thereafter, appellant filed its garnishment on May 31, 1991.

After Cleveland General's decision to close, a decision was made to return the secured assets to the bank, since this collateral was the rightful property of the bank. Apparently, the amount due and owing to the bank was far in excess of the value of Cleveland General's assets. The bank requested that Cleveland General sell its assets, which were secured by the bank's perfected security interest, at a public auction and surrender the auction's proceeds to the bank.

In response to the bank's request in this regard, Cleveland General executed an assignment for the benefit of its creditors to Attorney James L. Reed. Because all of Cleveland General's assets were secured by the bank's financing statement, the amount of money owed to the bank was in excess of the value of the secured collateral. Therefore, in light of the bank's priority, there were no proceeds remaining to be distributed to any creditors with interests junior to the bank.

On or about May 21, 1991, a public auction was conducted by one Jeff Bub, an auctioneer, to sell the assets of Cleveland General. On June 5, 1991, attorney Reed received a garnishment order from the Cleveland Municipal Court. The parties disagree as to whether Reed was in possession of any of the proceeds from the sale of Cleveland General's assets. Reed, however, responded on June 5, 1991, that he did not have any of the proceeds or assets of Cleveland General. On or about June 11, 1991, the proceeds were delivered to the bank by Reed in the form of a check from Jeff Bub, the auctioneer.

When appellant discovered that the proceeds had in fact been delivered to the bank, appellant filed a motion to show cause in the Cleveland Municipal Court on July 27, 1991. The motion requested that the Cleveland Municipal Court determine whether Reed and/or Bub should be held in contempt of court for failing to properly respond to a garnishment order filed May 31, 1991.

A hearing was conducted by a referee of the Cleveland Municipal Court, who issued a report and recommendation that Reed be held in contempt of court and ordered him to pay to the Clerk of Courts, for purposes of disbursement to the appellant, $21,282.90. Thereafter, both Reed and appellant filed objections.

A partial objection was filed by appellant requesting that the court award an additional $6,000 to appellant for attorney fees. Cleveland General filed objections to the report and recommendation also. A hearing on these objections was conducted by the Chief Referee of the Cleveland Municipal Court. The judgment was modified. The judgment entry found Reed guilty of indirect civil contempt for violating the June 5, 1991 garnishment order of the Cleveland Municipal Court. The court went on to state that since the funds at issue in the amount of $21,282.90 had been disbursed to the bank, a nonparty to the action for the benefit of Cleveland General, the court could not issue an order to Reed coercive in nature. The judgment entry goes on to award attorney fees in the amount of $1,100 against the contemnor, Reed.

It is this judgment appellant now appeals, asserting only one assignment of error. It states:

"The lower court erred as a matter of law when it held that it could not hold appellee [*sic*, James Reed] liable for disobeying its order of garnishment."

Appellant takes the position that a trial court may impose liability against a garnishee for failing to properly answer in a garnishment proceeding.

In support of this assertion, appellant relies on the case of *Januzzi v. Hickman* (1991), 61 Ohio St.3d 40, 572 N.E.2d 642. Appellant suggests that the holding in *Januzzi* that the garnishee's liability remains to be finally determined in either the contempt proceeding or the separate civil action provided by statute. The conclusion, therefore, according to appellant, is that a trial court may impose liability against a garnishee for failing to properly answer in a garnishment proceeding.

This court is not persuaded by the reasoning of appellant. The holding, in *Januzzi*, is that "a nonparty garnishee may not appeal from an order to pay into court entered in a postjudgment garnishment proceeding under R.C. Chapter 2716." *Id.* at syllabus. In dicta, subsequent to the holding, the Ohio Supreme Court goes on to state:

"The nonparty garnishee may not appeal regarding its garnishment liability until that liability is finally determined sometime later, in either the contempt proceeding under R.C. 2716.21(E) or the civil action under R.C. 2716.21(F).

"This procedure admittedly imposes risks on the garnishee. Being unable to appeal, the garnishee is faced with the dilemma of either obeying the order to pay into court or disobeying and risking contempt if it is wrong in its assessment of its liability." *Id.* at 44, 572 N.E.2d at 645.

R.C. 2716.21 expressly provides for two separate causes of action to be brought against the garnishee, where there is a failure on the part of the garnishee to pay the requested funds into court.

The first is contempt, imposed by the court, pursuant to R.C. 2716.21(E). The language is clear and unambiguous when it states "the court may proceed against [the garnishee] for contempt." The second cause of action is initiated by the judgment creditor pursuant to R.C. 2716.21(F). The language of that subsection is likewise clear and unambiguous when it states "the judgment creditor may proceed against the garnishee by civil action." The statute does not merge these two causes of action as appellant suggests, enabling the court to find a garnishee liable as though a civil cause of action had been brought against the garnishee by the judgment creditor. Instead, the statute specifically in subsection (F) permits the judgment creditor to pursue the liability issue in a separate civil action. According to the express language of R.C. 2716.21(E), the court, issuing the garnishment order, may proceed against the garnishee for contempt. Admittedly, there may be situations where the garnishee is still in possession of the funds, and the court may utilize its coercive contempt powers to order the

funds turned over to the judgment creditor. However, the instant case was not such a fact situation as the funds were in the possession of the bank.

The Cleveland Municipal Court chose to exercise its contempt powers by finding attorney Reed in contempt of court pursuant to R.C. 2705.02(A). R.C. 2705.02(A) states that "[a] person guilty of * * * [d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer" may be punished as for a contempt. The court was very clear that it could not issue an order coercive in nature to Reed because the funds in question were in the possession of a nonparty, the bank.

Consequently, the court decided to exercise its inherent powers to sanction outside R.C. Chapter 2705. The court may award damages to a complainant where it can be proven that the damages were a direct result of the contempt. See, *e.g.*, *Goralsky v. Taylor* (Mar. 22, 1990), Cuyahoga App. No. 56534, unreported, 1990 WL 32615, and *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St.2d 197, 64 O.O.2d 129, 299 N.E.2d 686.

The final question that remains is whether the judgment requiring Reed to pay attorney fees in the amount of $1,100 was an abuse of discretion. We hold that it was not.

A trial court does not abuse its discretion when it awards attorney fees in a contempt order where it has not been proven that the damages were the direct result of the contempt. In the instant case, the record is unclear as to whether Reed had the funds in his possession on June 5, 1991 when he received the garnishment order. Second, it appears that the bank's perfected security interest in all the proceeds rendered the junior obligations of Cleveland General such that none of the proceeds would have remained to pay appellant. Third, appellant still has its right to pursue a civil action against the garnishee pursuant to R.C. 2716.21(F). Based on these facts, it was not an abuse of discretion for the trial court to award attorney fees only, in the amount of $1,100.

*Judgment affirmed.*

JOHN F. CORRIGAN, P.J., BLACKMON and ANN MCMANAMON, JJ., concur.